**Otis A. KELLY, Respondent,**

v.

**DAIRY QUEEN ENTERPRISES, INC., Ulrich Thiesen and Cecilia M. Thiesen, d/b/a Dairy Queen Restaurants, Appellants.**

No. 39651.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 24, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 15, 1979.

Application to Transfer Denied June 19, 1979.

Anthony F. Vaiana, St. Louis, for appellants.

Kortenhof & Ely, K. Steven Jones, St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

Otis Kelly, a self-employed heating and air conditioning repairman, was injured when a ladder upon which he was climbing to the roof of a Dairy Queen restaurant at 609 Lafayette Street, St. Louis, Missouri, slid out from beneath him. He brought an action against Dairy Queen Enterprises, Inc., and the individual franchise operators of the restaurant for damages for personal injuries sustained in the fall. The jury returned a verdict for $40,000, and defendants have appealed. We reverse.

On Wednesday afternoon, November 26, 1975, at about 3:00 o'clock respondent made a service call to the Dairy Queen restaurant. When he arrived it was snowing heavily but there was little accumulation of snow. The equipment needing repair was the "blower assembly unit" for the furnace, and it was located on the roof of the building. The only means of access to the roof was by use of a ladder on the outside of the building. Plaintiff was familiar with the building because he had been there thirty or forty times for service calls. He used his own aluminum extension ladder which was equipped with "rubber feet." Plaintiff climbed the ladder to the roof, disconnected the "blower assembly unit" which weighed about 30 pounds, and carried it down the ladder. He was on the roof about an hour, and while there it snowed several inches. The following day was Thanksgiving and the restaurant was closed. Plaintiff was asked to return the unit on the following Friday which he did about 8:30 o'clock in the morning. Over Thanksgiving Day there had been an accumulation of approximately 6 to 8 inches of snow. None of the snow had been removed from the west side of the parking lot where he had placed his ladder the previous Wednesday. Plaintiff testified that snow had been removed from in front of the building and from a portion of the east side, but the manager of the restaurant testified that at the time plaintiff came to the building on Friday he "had not cleared anything yet."

The building faced south, and the ground sloped from west to east. Plaintiff placed his truck on the west side of the building and placed his ladder a few inches from the side of the truck and near the same place he had placed the ladder two days earlier. He saw what appeared to be a "clear spot," and he placed the left leg of the ladder on that spot and placed the right leg "into the snow." He then "jumped up and down * * * on the bottom rung" a couple of times and it "seemed quite solid." He then obtained the blower unit from his truck and started up the ladder. When he was "just looking over the edge of the roof" the ladder "just slipped out" from under him, and he fell about twelve feet and was injured.

Plaintiff saw no ice on the parking lot, and no one told him there was ice under the snow. The west side of the lot did not appear to plaintiff to be "any worse on Friday than it was on Wednesday."

Plaintiff did not clear the snow where he placed his ladder because "snow will usually hold it [the ladder] rather than cause it to

slide." When asked if it was his experience that "you get less slip with a ladder if you put it in the snow rather than on the bare ground," plaintiff replied "the snow seems to hold it," but if he had a choice he did not prefer to put the ladder in snow rather than on asphalt. However, he stated that he "didn't think that the snow would be slippery," and he thought he exercised due caution. After the ladder slipped he did not examine the area where it had been to see if there was any ice there, and in his testimony he did not state what caused the ladder to slip.

Mr. James F. Crowder, manager of the Dairy Queen, testified that at the time plaintiff was injured snow had not been removed from the areas on the north and west sides of the building, and that he did not know "if there was snow or if it was clear there or what." On deposition, which was read into evidence, he testified that he did not know if there had been any "overnight melting of the snow or if it had melted the day before." He was asked: "Do you know if there was a layer of ice covered by snow or do you have any knowledge one way or another?" He replied: "Well, I would say it was, had to be some ice out there."

Plaintiff submitted his case against Dairy Queen Enterprises, Inc. and Ulrich and Cecilia Thiesen, the franchise owners, on the basis that "there was a hidden layer of ice underneath the snow on the parking lot and that as a result the parking lot was not reasonably safe for the public, \* \* \*."

■ Plaintiff, as an independent contractor, was a business invitee. *Enloe v. Pittsburgh Plate Glass Company,* 427 S.W.2d 519 (Mo.1968). The applicable rules governing the liability of defendants in this factual situation appear in Restatement of Law of Torts, Second (1965), §§ 343 and 343A(1).

§ 343: "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

§ 343A(1): "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

■ The basis of a proprietor's liability in a case of this nature is his superior knowledge of the defective condition of his premises which results in injury to his business invitee. *Hokanson v. Joplin Rendering Company, Inc.,* 509 S.W.2d 107 (Mo.1974). However, if the dangerous condition is obvious and known, or in the exercise of ordinary care should be known by the invitee actionable negligence is not established. *Heine v. John R. Thompson Co.,* 330 S.W.2d 867 (Mo.1959); *Wilkins v. Allied Stores of Missouri,* 308 S.W.2d 623 (Mo.1958); *Schmoll v. National Shirt Shops of Mo.,* 354 Mo. 1164, 193 S.W.2d 605 (1946); *Hokanson v. Joplin Rendering Company, Inc.,* supra.

There is no direct evidence that ice under the snow was the cause of the ladder slipping. Plaintiff saw no ice and was not told that ice was present. He did not examine the area after the ladder slipped to determine the cause, and no such examination was made by the defendants.

By his instructions plaintiff submitted that there was a "hidden layer of ice underneath the snow." This according to plaintiff, constituted the "defective condition" which resulted in an "unreasonable risk of harm" of which defendants had "superior knowledge" and of which he was not aware and in the exercise of ordinary care could not have been aware. As proof of defendants' superior knowledge plaintiff relies on the answer of Mr. Crowder given on deposition and read into evidence, and which is quoted above. He contends that this an-

swer constituted "some evidence of superior knowledge" on the part of defendants.

The answer was given on deposition subsequent to the injury, and at most it constituted a speculative conjecture based on hindsight that after a six to eight inch snow there had to be some ice "out there." In no way can this be construed to be an admission that prior to the accident Mr. Crowder knew that where plaintiff placed his ladder on the west side of the building there was a hidden layer of ice underneath the snow. But, assuming that some knowledge at the time of the accident on the part of Mr. Crowder of the presence of ice is indicated, in what respect was it superior to that of plaintiff? Mr. Crowder had no personal knowledge of the presence of ice under the snow. At most he assumed that when six to eight inches of snow occurred there had to be "some ice out there." The duty or right to make that assumption would be equally applicable to plaintiff, and unquestionably more appropriate. Plaintiff was present at the location and looking for a safe place to stand the ladder. As stated in the *Hokanson* case, supra at page 114, "The ordinary care which an invitee must exercise to know and apprehend danger confronting him on premises to which he is invited must be considered in the light of the unusual circumstances surrounding cases such as this, where the invitee is actually in charge of the operation in which he is engaged, has control over the area of the premises where he is injured, is an experienced and skilled workman following his own devices in performing the work he has undertaken, and knows and appreciates the dangers involved in the use of ladders [in the snow] * * *. In such case he is 'expected to employ his superior skill and knowledge to avoid injury to himself.'" Plaintiff was not a servant ordered by defendant to go where he did. He was an experienced heating and air conditioning serviceman using his own equipment and following his own devices. He knew the conditions he was to cope with and the need for precaution as evidenced by his search for a "clear spot" to place one leg of the ladder and by his jumping up and down on the bottom rung. Under these circumstances defendants cannot be charged with liability for the unfortunate occurrence.

Plaintiff's contention that defendants did not preserve for appeal their contention that the trial court erred in overruling their motion for a directed verdict is overruled.

Judgment is reversed and the cause remanded with directions to set aside the verdict and judgment and enter judgment for defendants in accordance with the motion for directed verdict.

DOWD, P. J., and CRIST, J., concur.